# EXHIBIT A

IN THE CIRCUIT COURT FOR THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION

ALBERTO PEREZ, CREAH FISHLEY,
and KATHY CARR, on behalf
of themselves and on behalf of all others
similarly situated,

       Plaintiffs,

v.                                   Case No.:

MEDNAX SERVICES, INC., a Florida
Profit Corporation,

       Defendant.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Alberto Perez, Creah Fishley and Kathy Carr, on behalf of themselves and the

putative class set forth below, and in the public interest, bring the following Class Action

Complaint as of right against Defendant, Mednax Services, Inc., ("Defendant" or "Mednax")

including, subsidiaries, divisions and affiliates under the Fair Credit Reporting Act of 1970, as

amended ("FCRA"), 15 U.S.C. § 1681 et seq.

## PRELIMINARY STATEMENT

1.      Mednax is a multi-specialty medical solutions group with hundreds of locations

throughout the United States.

2.      Mednax routinely obtains and uses information in consumer reports to conduct

background checks on applicants and employees.

3.      The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use

a consumer report for an employment purpose.  Such use becomes lawful if and only if the "user"

– in this case Mednax – has complied with the FCRA's strict notice requirements. *See* 15 U.S.C. §

1681b(b)(3)(A)(i).

4.      Mednax willfully violated these requirements in multiple ways, in systematic violation of Plaintiffs' rights and the rights of other putative class members.

5.      Specifically, Mednax violated 15 U.S.C. § 1681b(b)(3)(A)(i) by denying employment opportunities to Plaintiffs based in part or in whole on the results of their consumer reports without first providing them notice and a copy of the reports, as well as a reasonable opportunity to dispute or discuss the contents of the reports.

6.      Providing a copy of the background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading consumer reports.  The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.  Even if reports are accurate, the FCRA demands that applicants receive them and their written FCRA rights so that they may preemptively discuss negative information with the potential employers.

7.      In Count I, Plaintiffs assert a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A)(i) on behalf of an "Adverse Action Class" consisting of:

> **All consumers in the United States who (1) were subject to a consumer report provided to Mednax, (2) for whom, based in whole or in part on the information contained in those consumer report, (3) there was an adverse employment action taken, and (4) to whom Mednax did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before taking such adverse action, (5) for the five years preceding the date of this action.**

8.      On behalf of themselves and the putative class, Plaintiffs seek statutory damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

**PARTIES**

9.      Plaintiff, Alberto Perez ("Perez") is a consumer who applied for employment with Defendant and subsequently was denied in whole or in part because of his consumer report.

10.     Plaintiff, Creah Fishley ("Fishley") is a consumer who applied for employment with Defendant and was subsequently denied in whole or in part because of her consumer report.

11.     Plaintiff, Kathy Carr ("Carr") is a consumer who applied for employment with Defendant and was subsequently denied in whole or in part because of her consumer report.

12.     Plaintiffs are members of the putative Adverse Action Class.

13.     Defendant, Mednax Services, Inc. is a corporation and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

**JURISDICTION AND VENUE**

14.     This is an action for damages that exceeds the sum of THIRTY THOUSAND DOLLARS ($30,000.00), exclusive of costs and attorneys' fees (The estimated value of Plaintiffs' claim is in excess of the minimum jurisdictional threshold required by this Court). Accordingly, Plaintiffs have entered "$30,001" in the civil cover sheet for the "estimated amount of the claim" as required in the preamble to the civil cover sheet for jurisdictional purposes only (the Florida Supreme Court has ordered that the estimated "amount of claim" be set forth in the civil cover sheet for data collection and clerical purposes only). The actual value of Plaintiffs' claims will be determined by a fair and just jury in accordance with Article 1, Section 21, Fla. Const.

15.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

16.     Venue is proper in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida because Mednax does business in Broward County and its corporate

headquarters is located in Broward County, Florida.

## FACTUAL ALLEGATIONS

### *Mednax's Use of Background Checks*

17.     Mednax's uniform, national practice is to conduct background checks on job applicants and employees, regardless of position.

18.     Mednax does not perform these background checks in-house.  Rather, Mednax relies on an outside consumer reporting agency ("CRA") to obtain this information and report it to Mednax.  These reports constitute "consumer reports" for purposes of the FCRA.

19.     Mednax uses these consumer reports to make employment decisions, *i.e.* determine whether consumers are eligible for employment.

20.     Mednax views them and enters a code or designation in its computer system with which a person is ineligible for hire (if an applicant) or cannot continue employment (if already hired pending a background check).

21.     At that point, Mednax considers the individual to be ineligible for employment.

### *Plaintiff Perez*

22.     In October 2021, Perez was required to electronically authorize the procurement of his consumer report for employment with Mednax for an EEG Technician position at the Winter Park, FL location.

23.     Mednax denied Perez employment, in whole or in part, based on his consumer report.

24.     Mednax never provided Perez with a copy of his background check before denying him employment.

25.     Mednax entered a code in its computer system rendering Perez ineligible for

employment based on his background check.  The entering of this code and consequent denial of employment were adverse employment actions.

26.     Mednax's failure to provide Plaintiff Perez with pre-adverse action notice, including a copy of his consumer report and written summary of her FCRA rights at least five business days before coding him as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

27.     Because Plaintiff Perez did not receive a copy of his background check before Mednax took an adverse employment action against him, Plaintiff Perez never knew what was being reported about him or if it was even correct.  In other words, Plaintiff Perez never had the opportunity to see the consumer report Mednax was using to take action against him.

28.     Plaintiff Perez never had the opportunity to plead his case for employment with Mednax.

29.     If Plaintiff Perez had been provided a copy of his background check, he would have been able to put what was being reported about him in context and continue his employment, as Plaintiff Perez had performed successfully in the same role for seven years prior to Mednax rejecting him for employment.

### *Plaintiff Fishley*

30.     On October 4, 2021, Plaintiff Fishley was required to electronically authorize the procurement of her consumer report for employment with Mednax for a medical assistant position at the Orlando, FL location.

31.     Mednax denied Plaintiff Fishley employment, in whole or in part, based on her consumer report.

32.     Mednax never provided Plaintiff Fishley with a copy of her background check

before denying her employment.

33.     Mednax entered a code in its computer system rendering Plaintiff Fishley ineligible for employment based on her background check.  The entering of this code and consequent denial of employment were adverse employment actions.

34.     Mednax's failure to provide Plaintiff Fishley with pre-adverse action notice, including a copy of her consumer report and written summary of her FCRA rights at least five business days before coding her as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

35.     Because Plaintiff Fishley did not receive a copy of her background check before Mednax took an adverse employment action against her, Plaintiff Fishley never knew what was being reported about her or if it was even correct.  In other words, Plaintiff Fishley never had the opportunity to see the consumer report Mednax was using to take action against her.

36.     Plaintiff Fishley never had the opportunity to plead her case for employment with Mednax.

37.     If Plaintiff Fishley had been provided a copy of her background check, she would have been able to put what was being reported about her in context and continue her employment, as she had successfully performed the same job for almost eleven years prior to Mednax rejecting her for employment.

***Plaintiff Carr***

38.     On October 3, 2021, Plaintiff Carr was required to electronically authorize the procurement of her consumer report for employment with Mednax for a research coordinator position at the Winter Park, FL location.

39.     Mednax denied Plaintiff Carr employment, in whole or in part, based on her

consumer report.

40.     Mednax never provided Plaintiff Carr with a copy of her background check before denying her employment.

41.     Mednax entered a code in its computer system rendering Plaintiff Carr ineligible for employment based on her background check.  The entering of this code and consequent denial of employment were adverse employment actions.

42.     Mednax's failure to provide Plaintiff Carr with pre-adverse action notice, including a copy of her consumer report and written summary of her FCRA rights at least five business days before coding her as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

43.     Because Plaintiff Carr did not receive a copy of her background check before Mednax took an adverse employment action against her, Plaintiff Carr never knew what was being reported about her or if it was even correct.  In other words, Plaintiff Carr never had the opportunity to see the consumer report Mednax was using to take action against her.

44.     Plaintiff Carr never had the opportunity to plead her case for employment with Mednax.

45.     If Plaintiff Carr had been provided a copy of her background check, she would have been able to put what was being reported about her in context and been hired by Mednax, as Plaintiff Carr had successfully performed the same role for four years prior to being rejected for employment.

### *Plaintiffs' Concrete Harm*

46.     Mednax's failure to provide pre-adverse action notice injured Plaintiffs in that they were deprived of information due to them at a particular time, and the ability to contest or

discuss with Mednax the content of their consumer reports.

47.     These rights attach even if the reports were accurate, as courts regularly recognize that § 1681b(b)(3) entitles consumers to know the same information the employer is using to make its hiring decision and, even if the report contains no inaccuracies, to soften the brunt of negative information by discussing it preemptively with the employer before the hiring decision is made.

48.     Mednax denied Plaintiffs' employment based in whole or in part on the content of their consumer reports but did not first provide them with pre-adverse action notice, including a copy of their consumer reports.   Therefore, Mednax failed to satisfy the federally imposed requirements of § 1681b(b)(3)(A)(i).   This resulted in an informational injury to Plaintiffs and class members.

49.     Because Mednax failed to provide Plaintiffs a copy of their consumer reports, Plaintiffs were further deprived of the opportunity to see how their personal, sensitive information was being reported by a consumer reporting agency.

50.     Because Mednax failed to provide Plaintiffs with a copy of their consumer report, Plaintiffs were deprived of the opportunity to proactively address how their background was being interpreted by Mednax and to discuss the information and place it in context.

51.     Plaintiffs worried whether the information contained in their consumer reports was accurate and how it would affect their prospects of employment elsewhere.

52.     The FCRA's protections regarding who may obtain consumer reports and how they may be used are real and substantive, not merely procedural.   The violation alleged here is not just a technical requirement – Mednax had no right to take an adverse employment action against Plaintiffs without first providing them notice of its intent, and copies of Plaintiffs'

reports.

53.     Plaintiffs and the putative class members, all of whom were denied pre-adverse action notice, therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

54.     Plaintiffs and Class Members suffered additional concrete harm because of the adjudication of their reports.  In taking such adverse actions against consumers before providing them with the notice and summary of rights demanded by § 1681b(b)(3), Defendant deprived Plaintiffs and class members with information to which they were statutorily entitled at a particular time.  This deprivation worked concrete harm on Plaintiffs and members of the class.

55.     Courts regularly recognize that violations of § 1681b(b)(3) work concrete harm on consumers. *See*, e.g., *Helwig v. Concentrix Corp.*, No. 1:20-cv-920, 2021 WL 1165719, at *3 (N.D. Ohio Mar. 26, 2021) (concluding that deprivation of notice before adverse action resulted in Article III harm, and citing cases from the Third, Sixth, Seventh, and D.C. Circuits so holding).

56.     This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Mednax) could obtain and use a consumer's personal information found on a consumer report.

57.     In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiffs and consumers like them with respect to employer use of a consumer report for an employment adverse action.

58.     Plaintiffs and each putative class member have been substantively harmed and injured by Mednax in the deprivation of the congressionally mandated information.

59.     Courts have concluded that concrete harm results from the deprivation of notice

even if the background report is accurate. *Hood v. Action Logistix, LLC*, No. 4:20-cv-978 RWS, 2021 WL 1143885, at *4 (E.D. Mo. Mar. 25, 2021) (concluding that "[a]n unsuccessful job applicant suffers a concrete harm when he is deprived of these [Section 1681b(b)(3)] rights— even if the information in the report is true and accurate," and collecting cases holding likewise).

60.     That is because context is important, and being denied the ability to see the report on which an employer is basing a negative hiring decision prevents consumers from being able to explain any negative information. *See id.* at *5 ("[T]he language of § 1681b(b)(3)(A) as well as the legislative history of the FCRA reflects clear congressional intent to make an individual's inability to review and respond to the contents of his consumer report before suffering an adverse employment action a redressable harm.").

### *Mednax Acted Willfully*

61.     Mednax knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

62.     Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that

the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer).

63.     To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

64.     Upon information and belief, Mednax knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

65.     Despite its certifications, Mednax knowingly violated 15 U.S.C. § 1681b(b)(3).

66.     Mednax obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

67.     These requirements have been part of the fabric of the FCRA since Congress enacted it.  Mednax has had decades by which to become compliant with these requirements, yet it has not done so.

68.     Despite knowledge of these legal obligations, Mednax acted consciously in breaching its known duties and depriving the Plaintiffs and putative class members of their rights under the FCRA.

69.     As a result of these FCRA violations, Mednax is liable to Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

70.     Pursuant to Rule 1.220(b)(1), (2), and (3) of the Florida Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiffs bring this action for themselves and on behalf of the putative class below.

71.     In Count I, Plaintiffs assert a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A)(i) on behalf of an "Adverse Action Class" consisting of:

> **All consumers in the United States who (1) were subject to a consumer report provided to Mednax, (2) for whom, based in whole or in part on the information contained in those consumer report, (3) there was an adverse employment action taken, and (4) to whom Mednax did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before taking such adverse action, (5) for the five years preceding the date of this action.**

72.     Numerosity: The members of the putative class are so numerous and geographically dispersed that joinder of all Class members is impracticable.   Mednax regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, in the hiring process.   Plaintiffs are informed and believe that during the relevant time period, hundreds of Mednax's employees and prospective employees satisfy the definition of the putative class.   Based on the number of putative class members, joinder is impracticable.   The names and addresses of the Class members are identifiable through Mednax's records and published Class members may be notified of this action by mailed notice.

73.   Typicality: Plaintiffs' claims are typical of those of the members of the putative class.  Mednax typically uses consumer reports to conduct background checks on employees and prospective employees.   The FCRA violations suffered by Plaintiffs are typical of those suffered by other  putative  class  members,  and  Mednax treated  Plaintiffs  consistent with other putative class members in accordance with their standard policies and practices.

74.   Adequacy: Plaintiffs  will  fairly  and  adequately  protect  the  interests  of  the putative  class,  and  has  retained  counsel  experienced  in  complex  class  action  litigation.

75.   Commonality: Common questions of law and fact exist as to all members of the putative  class,  and  predominate  over  any  questions  solely  affecting  individual  members  of  the putative  class.  These common questions include, but are not limited to:

    a.  whether  Mednax  uses  consumer  report  information  to  conduct background checks on consumers;

    b.  whether  Mednax  provided  consumers  with  notice  and  copies  of  their consumer  reports  before  taking  an  adverse  employment  action  against them;

    c.  whether Mednax's violation of the FCRA was willful; and

    d.  the proper measure of statutory damages.

76.   This case is maintainable as a class action because prosecution of actions by or against  individual  members  of  the  putative  class   would  result  in  inconsistent  or  varying adjudications  and  create  the  risk  of  incompatible  standards  of  conduct  for  Mednax.   Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other  individuals not a party to such action, thereby impeding their ability to protect their interests.

77.   This case is also maintainable as a class action because Mednax acted or refused to act on grounds that apply generally to the putative class, so that final injunctive

relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

78.     Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Mednax's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative class do not have an interest in pursuing separate actions against Mednax, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Mednax's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

79.     Plaintiffs intend to send notice to all members of the putative class to the extent required by the Florida Rules of Civil Procedure. The names and addresses of the putative class members are readily available from Mednax's records.

### COUNT I
### Failure to Provide Pre-Adverse Action Notice in
### Violation of the FCRA 15 U.S.C. § 1681b(b)(3)(A)(i)

80.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs 17-69.

81.     Mednax used a "consumer report," as defined by the FCRA, to take an adverse employment action against Plaintiffs and other members of the Adverse Action Class.

82.     Mednax violated the FCRA by failing to provide Plaintiffs and other class members with pre-adverse action notice, and a copy of the consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A)(i).

83.     The foregoing violations were willful.  Mednax acted in deliberate or reckless disregard of its obligations and the rights of Plaintiffs and other Class members under 15 U.S.C. § 1681b(b)(3)(A)(i).  Mednax knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission.  Mednax obtained or otherwise had available substantial written materials that apprised Mednax of its duties under the FCRA.  Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

84.     Moreover, at the time Mednax failed to follow 15 U.S.C. § 1681b(b)(3)(A)(i) a plethora of FTC opinions and case law existed.

85.     Plaintiffs and the putative class are entitled to statutory damages of not less than $100.00 and not more than $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

86.     Plaintiffs and the putative class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class, pray for relief as follows:

        a.      determining that this action may proceed as a class action;

b.    designating Plaintiffs as class representatives and designating Plaintiffs' Counsel as counsel for the putative class;

c.    issuing proper notice to the putative class at Mednax's expense;

d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiffs and the putative class demand a trial by jury.

Dated this 28th day of January, 2022.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813.223.5505
Fax: 813-257-0572
Medelman@forthepeople.com
*Attorney for Plaintiff*

**IN THE CIRCUIT COURT FOR THE SEVENTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BROWARD COUNTY, FLORIDA**
**CIVIL DIVISION**

ALBERTO PEREZ, CREAH FISHLEY,
and KATHY CARR, on behalf
of themselves and on behalf of all others
similarly situated,

      Plaintiffs,

v.                                Case No.:

MEDNAX SERVICES, INC., a Florida
Profit Corporation,

      Defendant.

_____/

**SUMMONS**

THE STATE OF FLORIDA:
TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:
GREETINGS:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the complaint or petition in this action upon defendant(s):

**MEDNAX SERVICES, INC.**
**c/o Corporation Service Company, its Registered Agent**
**1200 S. Pine Island Road**
**Plantation, FL 33324**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached Complaint with the Clerk of the Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may way to call an Attorney right away. If you do not know an Attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of the written response to the Plaintiff's attorney:

Marc Edelman, Esquire
Morgan & Morgan, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-223-5505  Facsimile: 813-223-5402

DATED: _____FEB 01 2022_____

(Court Seal)

                                 BRENDA D. FORMAN
                                 Clerk of the Court
                                 By:_____
                                 As Deputy Clerk

**BRENDA D. FORMAN**
                                       Warren Sua
                                       1547
                                       2022/02/03 14:16:33

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 01/28/2022 01:47:52 PM.****

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days.  If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711."